FARMERS CO-OPERATIVE CREAMERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31444.   Promulgated November 11, 1930.

*Allen H. Gardner, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The question before us is whether or not petitioner is entitled to exemption under section 231 (11) of the Revenue Act of 1924 and section 231 (12) of the Revenue Act of 1926. The Act of 1924 provides:

SEC. 231. The following organizations shall be exempt from taxation under this title—

\* \* \* \* \* \* \*

(11) Farmers', fruit growers', or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them; or organized and operated as purchasing agents for the purpose of purchasing supplies and equipment for the use of members and turning over such supplies and equipment to such members at actual cost, plus necessary expenses.

Subsequent to the passage of the Revenue Act of 1924 the Commissioner promulgated Regulations 65 in which is found article 522 construing and interpreting section 231 (11) of the Act. It reads as follows:

Cooperative associations.—(a) Cooperative associations, acting as sales agents for farmers, fruit growers, live-stock growers, dairymen, etc., or engaged in the marketing of farm products, and turning back to the producers the proceeds of the sales of their products, less the necessary operating expenses, on the basis of the produce furnished by them, are exempt from income tax and shall not be required to file returns. Thus cooperative dairy companies which are engaged in collecting milk and disposing of it or the products thereof and distributing the proceeds, less necessary operating expenses, among the producers upon the basis of the quantity of milk or of butter fat in the milk furnished by such producers, are exempt from the tax. If the proceeds of the business are distributed in any other way than on such a proportionate basis, the association does not meet the requirements of the statute and is not exempt. The accumulation and maintenance of a reasonable reserve for depreciation or possible losses or a reserve required by State statute or a reasonable sinking fund or surplus to provide for the erection of buildings and facilities required in the business, or for the purchase and installation of machinery and equipment, or to retire indebtedness incurred for such purposes, will not destroy the exemption. A corporation organized to act as a sales agent for farmers, or to market cooperatively the products of

the farm, and having a capital stock on which it pays a dividend not exceeding 8 per cent per annum or not exceeding the legal rate of interest, and in which the voting control is retained by the shareholders who are actual producers. will not for such reasons be denied exemption.

(b) Cooperative associations organized and operated as purchasing agents for farmers, fruit growers, live-stock growers, dairymen, etc., for the purpose of buying supplies and equipment for their use and turning over such supplies and equipment to them at actual cost, plus necessary operating expenses, are also exempt. The provisions of paragraph (a) relating to a reserve, sinking fund, or surplus, and to capital stock shall apply to associations coming under this paragraph.

In order to be exempt under either (a) or (b) an association must establish that it has no net income for its own account other than that reflected in a reserve, sinking fund, or surplus specifically authorized in paragraph (a). An association acting both as a sales and a purchasing agent is exempt if as to each of its functions it meets the requirements of the statute.

The more important provisions of this article were incorporated in section 231 (12) of the Revenue Act of 1926, which reads as follows:

SEC. 231. The following organizations shall be exempt from taxation under this title—

\*     \*     \*     \*     \*     \*     \*

(12) Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise. beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. Such an association may market the product of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases.

That this action by Congress did not change the existing law but was designed solely to prevent a possible narrowing thereof by ad-

ministrative construction fully appears in the Conference Report of the Congressional Committee at page 37, wherein it is stated:

\* \* \* This amendment does not broaden the scope nor even include all of the provisions of the Treasury regulations, but only incorporates certain provisions adopted by the department as fundamental in allowing exemptions to cooperative marketing and purchasing associations. The amendment assures such associations, now exempt, that the liberal construction by the department of existing law is sanctioned by Congress, and will prevent a restriction upon the present exemptions, such as is now possible under existing law.

An almost identical statement appears in the report of the Committee on Finance of the Senate.

From the foregoing it is apparent that Congress looked with entire favor on the broad construction given to the Revenue Act of 1924 and that Regulations 65 truly reflected the Congressional intent. In *South Carolina Produce Association*, 19 B. T. A. 1028, we expressed the opinion that these regulations were both reasonable and sound and we here reaffirm that view. In so far as the views expressed in *Riverdale Co-operative Creamery Association*, 18 B. T. A. 1159, are in conflict with those expressed in this opinion, they will hereafter be disregarded.

Passing to the facts in the instant case, the evidence shows that petitioner was essentially a cooperative organization. It even went so far as to remove the penalty on nonstockholders provided by its articles of incorporation and treated shareholders and outsiders exactly alike, distributing to each his proportion of profit in accordance with the amount of butterfat furnished. Petitioner's dealing with nonshareholders did not amount to 50 per cent of its total.

Respondent really advances but two points of objection, i. e., that the persons listed as shareholders who owned farms but operated through tenants on a crop-sharing basis were not "producers," and that in any event the nonproducing shareholders constituted such a large percentage of ownership that the producers did not own "substantially all " of the stock. In neither of these contentions do we agree with the respondent. We believe that the farm owner who operates his farm by tenants on a crop-sharing basis is entitled to be called a producer. He risks his capital, furnishes seed and takes his chances on profits in much the same manner as he would were he to hire the work done for wages. The fact that he receives a crop share of produce, including dairy products, is persuasive that he is actually engaged in farming and is a producer of farm products.

We have, therefore, left to consider the question of whether or not substantially all of the stock was held by producers. It is noted that the statute does not define in percentages what constitutes "substantially all " of the stock. A similar term was used by section 240 of the Revenue Acts of 1918 and 1921, where, in defining affiliated

corporations, it provided that two or more domestic corporations should be deemed to be affiliated "if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the other or others * * *." In applying this section the Board has been called on many times to determine whether a given percentage constituted "substantially all." We believe the term should be interpreted in the light of the same considerations here.

In the findings of fact we have set out the attendant circumstances and the percentage of holdings of the several groups. Considering these facts, we have no difficulty in holding that substantially all of the stock of petitioner was held by producers.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

STERNHAGEN, dissenting: I disagree with the decision that the petitioner was exempt for 1924. For that year the right to exemption is governed, not by section 231 (12) of the subsequently enacted Revenue Act of 1926, which was made effective by section 286 only as early as January 1, 1925, but by the Revenue Act of 1924, the descriptive provisions of which in section 231 (11) were different. Had Congress chosen to do so, it might retroactively have modified the law as to 1924. It did not do so, but confined the new standards of exemption prospectively to periods after January 1, 1925. The legislative reports in respect of the bill which became the Revenue Act of 1926 are not the law of 1924, and are useful only to throw light on the interpretation of the Act of 1926. The Board may not treat them as binding interpretations of the preexisting law passed by an earlier Congress. Nor may the Board treat as authoritative the regulation of the Commissioner which not merely resolves an ambiguity or provides for the enforcement of the statute, but plainly broadens its clear provisions. There is no force to be attached to our opinion that the regulation is "reasonable." This is especially true when, despite the regulation, the Commissioner invokes the statute which he is presumably applying uniformly to all similar organizations. There is no more reason to apply the tests of the 1926 Act to the year 1924 than to the years 1920 and 1921, and I believe the refusal to do so in *Riverdale Co-operative Creamery Association*, 18 B. T. A. 1159 (now on review), was correct.

For 1924, the petitioner filed a return as a taxable corporation having insufficient income to bring about a tax. No claim for exemption was made. Later, when the Commissioner disallowed some of its deductions, it claimed exemption. There appear in this record varying statements made by the petitioner's representatives

from time to time as to the number of members, nonmember producers, and nonproducer members, such as bankers, a lawyer, a drug company, a lumber company, and retired farmers. Taking these various statements at the most favorable to the petitioner, as the Board now does, there is a large number who are not members within the terms of the 1924 Act, cf. *Riverdale Co-operative Creamery Association, supra,* and since an exemption provision must be strictly construed, the Board has no authority to override the Commissioner's denial of the exemption.

While I concur in the decision holding petitioner exempt as to 1925, I do not agree that the meaning of the words " substantially all " is governed by the construction placed on the highly controversial affiliation provisions of the Revenue Acts of 1918 and 1921. That controversy was provoked by the difficulties of the now obsolete consolidated returns provisions and it raged so furiously that Congress finally put it at rest by removing the words from the act. I think it is unnecessary and unsound to project that field of controversy into this exemption provision, the application of which must turn on different considerations.

Marquette, Phillips, and Murdock agree with this dissent.